16963 United States v. Favors. We have Mr. Adler here for Mr. Favors and Ms. Hoffman here for the United States. Mr. Adler, you're up first and it looks like you've reserved five minutes for rebuttal. Yes, thank you. Very well. Thanks so much. May it please the court. Andrew Adler from the Federal Defender's Office on behalf of Lonnie Favors. In this three witness felon in possession trial, a veteran prosecutor of 35 years repeatedly engaged in intentional misconduct during closing argument. The government's case at trial hinged entirely on the testimony of two officers. To bolster their credibility, the prosecutor appealed to the emotions and sympathies of the jury by comparing the officers to members of the military with loving wives and children waiting back home. He then invoked his 35 years of experience as a prosecutor to minimize the suspicious absence of any which was our main line of attack on the officer's credibility. Then after vouching for the officers about where they found the gun and burden shifting, he inflamed the passions of the jury by arranging the firearm, magazines, and ammunition to spell out the word guilty with an exclamation point. He strategically unveiled that photograph to ensure that it was the last thing the jury saw before it began deliberating, thereby maximizing the court failed to meaningfully remedy requires a new one day trial. Indeed, this was already a closed trial even with the misconduct because the jury deliberated for an hour and 46 minutes. Had they simply believed the two officers, they would have been back in about 10. Indeed, they had a lot to deliberate about because there was numerous witnesses and evidence that the government failed to put on in addition to the absence of the body camera footage. For example, the prosecution failed to call three of the five officers who were at the scene that day. It did not call the woman who called 911 that day even though she was available as a witness. It did not call the lead investigator, Agent Hertzlich, who was seated at council table even though he was in charge of DNA and fingerprint testing and we know that the gun was sent for fingerprint testing that day. It did not even have a picture of Mr. Favors at the scene, let alone in the car, let alone in the car with a firearm. It did not have a picture of the U-Haul truck that the officers apparently used to shield their approach to the car and that's not even getting to the absence of the body camera footage, which was highly suspicious and the reason why it was suspicious is that the arresting officer Norvis admitted that he 100% should have had his body camera on that day and had it been on, it would have captured everything that happened. We also know that he had been trained in the body camera policy about two weeks before the incident that he was accompanied by a supervising officer that day and he did not turn it on even when he realized that it was off and he didn't send the email to the department that he was supposed to send when he got back to the station. Meanwhile, we know that there were hours and hours of body camera footage from that day, but that's all we know because the government did not explain whose camera shot the footage or what was on it. Can I ask you, I recognize of course that you're making sort of a cumulative error and prejudice kind of argument here, but just so we can begin to sort of unpack this thing, are there episodes that you want to particularly highlight before us? You ran through them very quickly at the outset and I understand that there, I think there are seven or eight things that you're complaining about, but is there, are there one or two that you really want to kind of focus on? Yes, thank you, your honor. So the guilty photograph, obviously I'd be remiss if I didn't start there. You know, this, like I said, was the very last thing the jury saw. This was clearly intentional by the prosecutor. He went to the trouble of arranging all the ammunition the night before, clearly strategic, and the message was particularly inflammatory because what the prosecutor was really saying here is, look, this case involves a loaded gun and a lot of ammo, so he's guilty. That is no different than a prosecutor in a murder trial saying there's a dead body, so he's guilty. It's simply inflammatory. It does not help the jury assess the evidence or determine whether the defendant is guilty in this particular case, whether Mr. Favors knowingly possessed the firearm and ammunition. That was the disputed issue in the case. And then, so, so the problem as well with that is that the district judge didn't do anything to mitigate the prejudice. So while he sustained our objection, the prosecutor just plowed right through the judge's rulings and continued to make his argument. And then, you know, the judge did not instruct the jury to disregard the photograph, did not instruct the jury to disregard the argument, did not admonish the prosecutor in front of the jury, and then when we moved for a mistrial, the judge's first reaction was, well, how is this different than writing a guilty on the piece of paper? Well, it's very different because he's using the actual evidence in the case. For the government's part on appeal, they are defending this. They are saying, well, look, you know, the jury had already seen the evidence in the case, but of course they had not seen it in that format, and obviously that can't be the rule or else, you know, take a murder case. You can manipulate, you know, dead bodies, or you could take blood from the crime scene and write guilty. That cannot be the rule. The other two incidents of misconduct that I can ask... Can I stop you, Mr. Adler, at that one because it seems to me that's where I would begin, and I agree with you that that's the comment. But let me ask the question this way. Let's assume, for the purposes of my question, that that was error on the part of the prosecutor. What I'd like you to tell me is why it is reversible error in the face of an awful lot of evidence in the case. After all, the firearm was found somewhere under the floorboard by the driver's seat where your client was found, and in his pockets in a sweatshirt were found two magazines filled with bullets, all of which matched up with the firearm themselves. It looks pretty overwhelming to me if you accept the account of the officers that the magazines were in his pocket, and I don't see any dispute in the record about that, that even accepting it was error for the prosecutor to do what he did with the guilty sign, and speaking for myself, the answer is clear, and I agree with you about that. Why is it reversible? Thank you, Your Honor. So there's a number of things I'd like to say in response to that. First of all, it's not just the guilty photograph. There's a lot of other comments, but I understand, but that's the most egregious, it seems to me. Yes. So, Your Honor, the problem with your hypothetical is that the only evidence in this case came from the mouths of the officers who testified, and we were attacking their credibility. So if they are not credible, then there is no case, and so there are a lot of reasons why they were not credible, including primarily the absence of the body camera footage, but there are a number of other reasons as well why this is reversible, and I'd like to raise four points, which I think distinguishes this case from many other cases that the court sees in this area. Number one, all the objections are preserved contemporaneously. That doesn't happen a lot because defense lawyers are often trained not to object during closing. We don't have that problem here. Number two, this is not an isolated comment. This is not an unintentional slip of the tongue. This is repeated, pervasive, intentional misconduct. Number three, no meaningful curative instructions were given, which happens most of the time when a prosecutor oversteps. The district judges do a good job to try to rectify that and mitigate the prejudice. Can I stop you at that point and ask you about that one? No meaningful instructions. As I understand the record, the district court reminded the jury before the opening and the closing arguments that what the lawyers say is not evidence and instructed the jury that the only evidence at the trial was what came basically from the witness stand. I take it with regard to the guilty comment, the court sustained the objection twice, but didn't give them a cautionary instruction beyond that. But the judge did seem to tell him pretty clearly on multiple occasions that what the lawyers say is not evidence in the case. That's true, your honor. But what happened here is that it's not that the what the lawyers are saying is evidence is what the prosecutor is saying to bolster his case, to bolster the testimony of the officers and to undermine our attack on their credibility. Again, this case came down to whether these two officers were telling the truth and what the prosecutor said, even putting aside the guilty photograph, was that, look, these guys are telling the truth because they're like members of the military. They have family members back home. I've been doing this 35 years and I'm here to tell you where the gun was found. And I'm here to tell you that these body cameras are no big deal because we got convictions all the time without them. So that is the prosecutor improperly using his personal experience to undermine our defense. And he's using the sympathies of the jury to bolster the credibility of the officers. So an instruction that simply says, look, you know, what the lawyers say is not evidence, the sort of boilerplate instruction that, by the way, bookended the closing. It didn't happen, you know, after these comments, these inflammatory comments and improper comments. That's just not going to be sufficient. And I think if the court were to affirm in this case where we have a contemporary objection, contemporaneous objections, evidence that is not overwhelming, the government doesn't even use the word overwhelming in its brief, we have a repeated intentional misconduct, think about the message that that's going to send to prosecutors in this circuit, putting aside the prejudice that Mr. Faber suffered. If the court affirms in this case, the prosecutor's going to have free reign to do whatever they want to try and swing the outcome in close cases, which is exactly what happened here. Thank you. Okay. Thank you very much. You've reserved five minutes for rebuttal. Ms. Hoffman, we'll hear from you. Good morning, Your Honors. Andrea Hoffman on behalf of the United States. As Judge Marcus had just mentioned, the errors in this case, assuming that there are any for the purposes of this argument, are harmless in the light of the overwhelming evidence that was presented in this case and the form of the instructions that were given throughout the entirety of this case. I'll give you a brief moment on the facts and then I'd like to turn to the instructions for how that played into it. There's a 911 call that tells you the time that the call comes in. It tells you the location that the incident is occurring. It tells you where in the parking lot of the location the car can be found, how the car is parked in that location, and that there's an armed person within that vehicle. That's the dispatch notice to these officers who go out that day. So they go out on a serious, dangerous call that they already know has an armed circumstance involved in it. Then the two officers testify and they tell you that they go to that particular apartment location, that they go toward the back of the apartment location and find the car against a wrought iron fence as it was said in the call. And they find the defendant in the car. Outside of the call, what the caller couldn't have known, but the officers then find and they both testify to it, is that the vehicle is locked. When they get the defendant out of the car, he's the only person in the car. It was an untinted windowed car so they could see in it readily. They could see the gun in the car before they get him out. When they get him out, he's wearing a hooded sweatshirt and in that front pocket, as Judge Marcus alluded to, are the two magazines carrying, fully loaded magazines, carrying the bullets that match the necessary firepower for this particular weapon. And that weapon has a chambered round. So it's not just a magazine in the gun, it's a gun that is ready to be fired instantaneously and it's within arm's reach. All of that corroborative evidence happens in the trial and it happens between pages, in using the appendix because it's easiest page numbering, between 146 and 159 in the appendix. All of that happens. Three different iterations of it, different terminologies, different wording, corroborating what really happened that day. So the evidence is overwhelming. But despite that, you also have, as Judge Marcus alluded to, significant instructions that went on throughout the course of this trial. In the opening passages of the trial, the court starts with its opening instructions in reminding the jury on page 138 of the appendix that opening statements, closing statements, general remarks by the attorneys are not evidence. It then moves on to tell them that explaining what it means when an objection is sustained as it was with respect to the guilty photograph, that that piece of evidence is not to come in for consideration. Gave us an explanation of what happens when it's overruled, when it's sustained. So all of that happens well described long before the jury hears any of this. Then in the course of the closing argument, just minutes before the photograph is displayed, there was another incident in which the court specifically gave a curative instruction and informed the jury that what the attorneys say are not evidence, and that it's their job to rely upon their own recollections and to weigh the evidence. And then in closing, the court does it again. Reminds the jury what the burden is, who the burden is upon, something that the court had done multiple times in the course of the trial as well. And then reiterates that what the attorneys have said is not evidence and specifically says almost the words that Judge Marcus just said, that the evidence is the testimony from witnesses or the physical exhibit submitted in court. So literally practically says it's whatever happened on the witness stand. In his closing instructions, in the face of the volume of evidence in this case, magazines that were not challenged, so there's no staging, the defense was a staging defense that the government had framed this defendant in some form or fashion by placing the gun there because of the possibly two photographs that might have shown it in a different location. Well, that was all done in front of the jury. And we do not have significantly here a sufficiency of the argument challenge. There is no challenge that there was not sufficient evidence to convict this defendant in its own right. There is the prosecutorial misconduct challenge, but not a pure sufficiency. So we know that this defendant was carrying the magazines, an undisputed fact in the record as it is presented at this trial. The magazines are fully loaded. The bullets in the magazine in his shirt, sweatshirt, match the bullets that are in the magazine that is in the gun and the chambered round that is removed from the gun. And the jury has shown all of those. There are the photographs that exhibits two are the complex, exhibits three are the vehicle in place, exhibits four are the gun in its place in the vehicle, exhibits five are the magazines that were found from the sweatshirt, exhibit six is the bullets contained outside of the magazines now, and then you have the actual gun, the actual magazines, the actual bullet, and the actual sweatshirt. So you have all of this evidence over and over again for the jury. In light of that, presuming that things happened that would have been preferred to have not have happened in this trial, they did not stop you. Let me stop you on that. Presume that there might have things been things that happened that ought not to happen. Let me just ask you directly. Was it not error for the prosecutor to put up a photo of a mock up with the sign guilty using the firearm, the magazines and the bullets without you can see that that was error on the part of the prosecutor? Without question, the district court found that to be error. And without question, it is something that you would not recommend to a prosecutor to do in any case, your honor. Without we're I'm asking you whether it was error. Then we can get to whether it's harmless or not. There is there is an argument that it is not error in the context in which it came in, your honor, being that it the jigsaw puzzle analogy was appropriate. The district court is not wrong that the word guilty could have been written. All of those are true. Do I definitely not? Yes, your honor. I do think that it is. Let me ask a question this way. Following up on a point that Mr Adler made, was there any instruction given to the jury after there was an objection made and the objection was sustained two times? No, there was not, your honor. The court specifically, uh, clarified for the purposes of the jury that he was sustaining the error with respect to the prop. So the earlier instructions informing the jury that they're to disregard anything that has been sustained, the court then indicated that that was to the prop so that it did therefore sustain and they should disregard the photograph. There was no request for a curative instruction. There was no request for anything to be struck from the defense counsel and the court did not do anything further. The closing and the probably just guesstimating time written based on the written words on a page, probably less than 30 seconds after that happened and nothing further was asked of the court to do at that time. The whole mistrial thing obviously happened outside of the presence of the jury later while the jury was deliberating. Let me ask you about the first comment, uh, that the prosecutor made. He, toward the beginning of the closing, the prosecutor points out that the agents were responding to a 911 call regarding an armed gunman who feared for their safety. And then he went on to say, and I want to quote it, there's been criticism of the police and how they do their job. But other than the military, can you think of any other profession where you leave your house, if you're married, you leave your wife, if you're a father, you leave your children, if you're a mother? At that point, favor's counsel objects on the grounds that the remarks were inflammatory. The court sustains the objection. Was that error? The, was it error? The statement by the prosecutor, was it improper in the sense that it was designed and intended to inflame the passions of the jury rather than to understand the evidence? It's a mixed question, your honor. For me, in the context in which it was being laid out in the closing argument, he was building a frame about the dangerousness of the event, he was setting forth, he was drawing conclusions from the evidence, from the 911 call. Every dispatch call isn't a bulletproof vest, weapons drawn incident for the police. And this one was, and he was trying to set that in context. So it was an effort to draw conclusions, which he in that manner, your honor, but it was an attempt to be drawing conclusions. If you look at just two, you read the piece about the 911 call before, and then the very next piece afterwards is a discussion about the bulletproof vests and why they were in them. Objections to that were overruled and more than once, and a discussion of generally the dangerousness of what they were doing to explain how they approached the car and why they approached the car. All of that explanation for conduct was surrounding that piece of testimony. So it was an effort to be drawing conclusions directly from the evidence. The court did sustain the objection. So taking it as an error for the purposes of this argument, it then becomes in the weighing balance, a harmless error though, because there was context for it. There was corroboration for it. There was substantial evidence about the nature of the conclusions he was asking the jury to draw from his argument. If there are no other specific pieces of the allegations that the court would like addressing, then the government would ask that the court affirm... I'm pausing, Judge Marcus, it looked like you wanted to say something. Yeah, I just have one. I take it you agree that the district court erred in imposing the Armed Career Criminal Act enhancement based on the prior Georgia aggravated assault convictions? As Judge Lawson can probably tell all of us best, yes, I do agree, Your Honor. In light of this court's decision that came down in August 3rd of 2021 in Carter and the prior decision in Moss, the Georgia aggravated assault statute would not qualify in this case, in the facts of the separate documents for this defendant, to result in ACCA enhanced penalties. And so I do believe that resentencing is necessary on the ACCA factors. And we would agree with the remand for that purposes. We'd ask that the court affirm the convictions and that the court find that if error, and if any error, that it was improper. Thank you. Mr. Adler, you've got your five minutes remaining. Thank you, Your Honor. The government's presentation today only shows how badly this court's intervention is needed here. The government cannot bring itself to concede that the guilty photograph is improper? Well, no, I think in fairness, she expressly conceded that it was improper. She didn't concede that it was prejudicial, which is your burden to show as well. Well, if they conceded that, then I appreciate the concession. I think it is a little too late, frankly, because if you look at the government's brief in this case that they filed, pages 15 to 33 of the brief, are all defending the propriety of the closing, no qualifications. They spend a paragraph on harmless error, which shows you just how non-viable that route actually is. And I want to spend some time talking about why this court should not affirm based on harmless error. Number one, overwhelming evidence, again, not used in the government's brief. That word is not used. If it was overwhelming, why is the jury deliberating for an hour and 46 minutes in a case where there's two officers? If they're believed, then it's an easy case. Just to be clear, there is nothing, nothing in this trial that corroborates the testimony of the two officers. The evidence, the physical evidence in the case, all we know about that evidence is what the officers told us about it. There is nothing independent of their testimony that corroborates where that evidence was found, where it came from. So when the government says we didn't dispute any of this, well, we did because we disputed that these officers were credible. So everything that they were saying was subject to dispute by us. I have a question for you, Mr. Adler, factually. Was there evidence in the record about who owned the car in which your client was found? The only evidence about that, Your Honor, was that the car was stolen and it was a rental. That's all we know. There's no evidence that Mr. Favors owned the car. There's no evidence that Mr. Favors was even in the car other than what the officer said. So for all we know, he was picked up somewhere else. The entire case hinged on the credibility of these officers. There was no body camera footage of the arrest when there absolutely 100% should have been. That's why the jury is out for so long. We also know that the guilty photograph in particular had a prejudicial effect on the jury because the foreman is asking in the middle of deliberations to view the ammunition. Why? The physical characteristics of the ammunition have nothing to do with this trial. They're not in dispute. So we can only assume that it's because the foreman saw this photograph right at the end before deliberation and had his interest in that piqued. Your idea that as soon as the discovery was made that the camera was not turned on and there was no video of what the officers found, assuming they found him as alleged in the it was discovered there was no film that the case just should have been dismissed? No, Your Honor, and we're not saying that the evidence was insufficient. What we're saying is that the absence of the footage when there absolutely admittedly should have been footage undermines the credibility of the testifying officers in the case, and the prosecution depended on their credibility. Perhaps it does, but the jury found found the guy guilty. They did, Your Honor, and they had the benefit of an improper closing argument where the prosecutor used his own personal experience to bolster their credibility, to undermine our defense. He didn't say anything about the film, did he? Yes, he said, I've been doing this for many, many, many, many years, 32 years in federal court, and in my experience, you don't need body camera footage for convictions. We've gotten convictions for many years without them, and the message there is don't believe this defense about the body camera. It doesn't matter. He's minimizing the importance of the absence of... That error? I'm sorry? That error? Absolutely, Your Honor, and the district court sustained our objection to that, and I'm not sure what the government's position today was about that when pressed by Judge Marcus, but in their brief, they're defending this, doubling down on it, and so frankly, this is a case where we in the defense community, we just expect more from prosecutors in this circuit. I think this court should as well. The ethical bar is not high. Prosecutors, they just have to play it clean. They just have to play it straight. The prosecutor did not do that in this case. If there are no further questions, we urge that the court vacate the conviction and remand for a new trial, which should take all of one day. Thank you. Thank you very much, Mr. Adler. That case is submitted, and we will...